O’NIEDD, C. J.
 

 Appellant was convicted of the offense of manufacturing intoxicating liquor for beverage purposes.
 

 The record discloses that a deputy sheriff, having suspected the defendant of operating a still, and being unable to find the still, went with two assistants to the defendant’s home, and took him out into the woods, where they shackled him to the wheels of an automobile, and by punishing him mercilessly compelled him to show them where the still was. He led them to a place in the woods, about four miles from his home, and pointed out the still and a quantity of whisky in process of manufacture. He protested that he did not own the still or the whisky, and had not had anything to do with them. He said that he had found the outfit while hunting for his cows and hogs that had strayed into the woods.
 

 The testimony of the deputy sheriff, that the defendant showed him where the still was, was objected to by defendant’s attorney, on the ground that the evidence was not given freely or voluntarily, but was obtained in violation of the guaranty in section 11 of article 1 of the Constitution, that no person should be compelled to give evidence against himself in a criminal case or in any proceeding that might subject him to criminal prosecution.
 

 The fact that the man was compelled by threats and torture to give the evidence against himself is nqt disputed. It was proven by the testimony of the' defendant and of another witness and was not denied by any one. When the deputy sheriff was asked about it, on cross-examination by defendant’s attorney, the judge, at the request of the district attorney, instructed the witness that he had the right to refuse to answer any question if the answer “would tend to incriminate him in any way.” Therefore, to every question asked him with regard to the threats, and punishment which were said to have been inflicted upon the defendant, the deputy sheriff replied:
 
 “I
 
 refuse to answer.” The reason why he sought and obtained the protection of the court is that a statute of this state — the Act 169 of 1908 — makes it an offense, punishable by imprisonment, for a
 
 *617
 
 sheriff, constable, police officer, or any other person charged with the custody of any one accused of a crime or of a violation of a municipal ordinance, to frighten the person by threats, or to torture him, or to do anything of an inhuman nature, to obtain a confession from him. •
 

 The judge overruled the objection to the testimony of the deputy sheriff, and he therefore testified, not only that he had found the still and the whisky, but also that the defendant had showed him where it was.
 

 It is argued that the evidence which the defendant was compelled to give against himself — his showing the deputy sheriff where to find the still and whisky — was not a confession of guilt, and was therefore not subject to the rule forbidding involuntary confessions. If we were dealing only with the common-law rule,
 
 nemo tenetur seipsum acensare,
 
 the argument in support of the judge’s ruling in this case might be sustained by quotations from the decided cases and from the text-books on the law of evidence. But we are controlled by the mandate in the Constitution, which is not limited to a prohibition against involuntary confessions. The mandate is that—
 

 “No person shall be compelled to give evidence against himself in a criminal ease or in any proceeding that may subject him. to criminal prosecution.” Article 1, § IT.
 

 To compel a person accused or suspected of a crime to tell or indicate where evidence against him may be -found is to compel him to give evidence against himself. Evidence discovered in that way is, of itself and apart from what was said or done by the person subjected to the threats or punishment, admissible in evidence against him, notwithstanding the illegal and reprehensible means of obtaining it. Therefore the fact that the deputy sheriff found the still and the whisky where he did find them, and the articles themselves, were admissible in evidence, for all that they were worth, apart from any statement or indication which the defendant was compelled to give as evidence against himself. But the statement or indication which the defendant was compelled to - give, that he knew where the still was, was not admissible in evidence. The Supreme Court of the United States has affirmed the doctrine that any statement which an accused person has been compelled to give is inadmissible as evidence against him when he is put on trial, even though the statement was not a confession or admission of guilt. In the case of Bram v. United States, 168 U. S. 541, 18 S. Ct. 186, 42 IEd. 578, it was argued for the government that the statement which a detective had obtained from Bram was not a confession or admission of guilt, and was therefore not subject to the rule against involuntary confessions; but the court said:
 

 “It is manifest that the sole ground upon which the proof of the conversation was tendered was that it was a confession, as this was the only conceivable hypothesis upon which it could have been legally admitted to the jury. It is also clear that in determining whether the proper foundation was laid for its admission. we are not concerned with how far the confession tended to proye guilt. Having been offered as a confession and being admissible only because of that fact, a consideration of the measure of proof which resulted from it does not arise in determining its admissibility. If found to have been illegally admitted, reversible error will result, since the prosecution cannot on the one hand offer evidence to prove guilt, and which by the very offer is vouched for as tending to that end, and on the other hand for the purpose of avoiding the consequence of the error, caused by its wrongful admission, be heard to assert that the matter offered as a confession was not prejudicial because it did not tend to prove guilt. The principle on the subject is thus stated in a note to § 219- of Greenleaf on Evidence: ‘The rule excludes, pot only direct confessions, but any other declaration tending to implicate the prisoner in the crime charged, even though, in terms, it is an accusation of another, or a refusal to confess. Hex v. Tyler, 1 Car. & P. 129; Rex v. Enoch, 5 Car. & P. 539. See further, as to the object of the rule, Rex v. Court, 7 Car. & P. 486, per Littledale, J.; People v. Ward, 15 Wend. 231.’ Nor from the
 
 *619
 
 fact that in Wilson v. United States, 162 U. S. 621 (40:1096), mention was made of the circumstance that the statement of the accused was a mere denial of guilt accompanied with exculpatory explanations, does the decision in that case conflict with the principle we have just stated. The ruling there made that error to the prejudice of the accused did not arise from the admission of the statement there considered, was based, not alone upon the nature of the statement, but upon ‘the evidence of its voluntary character, the absence of any threat, compulsion, o.r inducement or assertion or indication of fear, or even of such influence as the administration of an oath has been supposed to exert.’ Page 624 (40:1097).
 

 “The contradiction involved in the assertion that the statement of an accused tended to prove guilt, and therefore was admissible, and then after procuring its admission claiming that it did not tend to prove guilt, and could not, therefore, have been prejudicial, has been ¡ well stated by the Supreme Court of North Carolina (State v. Rorie [1876] 74 N. C. 148):
 

 “ ‘But the state says this was a denial of guilt and not a confession. It was a declaration which the state used to procure a conviction; and it is not for the state to say the declaration did not prejudice the prisoner’s case. Why introduce it at all unless it was to lay a foundation for the prosecution? The use which was made of the prisoner’s statement precludes the state from saying that it was not used to his prejudice.’
 

 “In criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntáis, the issue is controlled by'that portion of the Fifth Amendment to the Constitution of the United States, commanding that no person ‘shall be compelled in any criminal case to be a witness against himself.’ ”
 

 It can hardly be disputed that the fact that the defendant knew where the still was was important evidence against him. That fact was extorted from him by threats and violence. Whether the evidence otherwise was sufficient to convict him of having operated the still is not for us to decide. When illegal evidence has been admitted in a criminal trial, resulting in a conviction, the verdict and sentence are illegal, no matter how much legal evidence was heard.
 

 Two Louisiana cases are cited to sustain the proposition that, when a person suspected of a crime has been compelled by threats or violence to disclose where evidence of the crime may be found, his statement or disclosure, as well as the evidence found in consequence of the disclosure, is admissible in evidence against him, viz.: State v. Slave George, 15 La. Ann. 146; and State v. Gebbia, 121 La. 1083, 47 So. 32. In neither case was there any mention of the distinction between admitting in evidence the facts found in consequence of an involuntary statement of the accused party and admitting in evidence the involuntary statement or disclosure itself. What was said in that respect in the case of the slave, George, was obiter dictum, because the verdict and sentence were annulled for the reason that the judge had allowed the involuntary confession of the slave to be admitted in evidence. The doctrine stated in Gebbia’s Case (page 1107 of the report), that facts discovered in consequence of a confession improperly obtained are admissible in evidence, was correct, as an abstract principle of law, and apart .from the recitals in the bill of exceptions. '
 

 The conviction is annulled, and the case is ordered remanded for a new trial.
 

 LAND and THOMPSON, JJ., concur in decree.