FOURNET, C. J., concurs in the decree denying the motion to dismiss insofar as the judgment deals with the alimony award, custody of children and attorney's fees, but should be maintained as to the separation decree.

HAMLIN, J., recused.

**119 So.2d 497**

**STATE of Louisiana**

v.

**Christian BRAUNER.**

No. 44969.

March 21, 1960.

Rehearing Denied April 25, 1960.

Claiborne, Baldwin & O'Hara, Edward M. Baldwin, Malcolm V. O'Hara, Louis Fenner Claiborne, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., Robert Zibilich, Asst. Dist. Atty., New Orleans, for appellee.

HAMITER, Justice.

Charged with the willful and unlawful possession of a narcotic drug (eleven marijuana cigarettes), the defendant, Christian Brauner, was tried by a jury, found guilty, and sentenced to five years at hard labor in the state penitentiary. From such conviction and sentence he appealed, relying for a reversal on one. bill of exceptions. (Actually two bills were perfected; however, the second was taken to the overruling of a motion for a new trial which was based on the same grounds as those urged in the first.)

The bill of exceptions relied on was reserved to the trial judge's action in admitting into evidence certain confessions of the defendant, his counsel having offered the objection that they were given to the arresting officers as the result of a promise calculated to, and which did, induce in him the hope of obtaining leniency and hence they were not free and voluntary.

In his per curiam to the bill the judge furnishes an analysis of the testimony relative to the circumstances surrounding the giving of the confessions. The following is the pertinent portion of it: "Outside the presence of the jury, three police officers of the New Orleans Police Department Narcotics Squad testified in substance as follows:

"That about 6 P.M. on February 12th, 1959, they went to the address 213 Alonzo Street in the City of New Orleans; that they found the defendant and his father in front of their residence; that the father was washing an automobile, while the defendant was by a motorcycle.

"That the defendant was asked if he was called C. J., to which he replied that he was; that he was informed by the police that they had information that he had marijuana 'hidden either in his car or his motorcycle'; that this was denied by the defendant.

"That defendant's father came up to the police and 'wanted to know what the trouble was'; that the police took the father aside and told him that they had a complaint that his son, C. J., had marijuana hidden in his car or motorcycle; that the father told the police they had his permission to search his son's automobile and motorcycle.

"That the father called his son aside and spoke to him out of the hearing of the police.

"That after this conversation between father and son, the police advised the son in the presence of the father, that if he had any narcotics it would be better for him to surrender it, as the police would search the car and motorcycle and find it.

"That the police also told the defendant in the presence of his father, that they were not particularly interested in him; that they wanted the supplier; that if defendant surrendered the narcotics, it was possible through the District Attorney's office, he might receive a suspended sentence; that this was possible, if he cooperated with the police; that this, however, was not a promise.

"That the father asked permission of the police to speak to his son alone.

"That after the father and son had spoken out of the hearing of the police, the defendant went to his motorcycle and took from the tool box attached to the motorcycle, a bag containing marijuana cigarettes and gave same to one of the officers; that upon surrendering the marijuana to the police, the defendant said that this was all he had left; that he bought some two weeks before for the carnival, and that that was what was left.

"That before leaving for the police station, the father advised his son, in the presence of the officers, to cooperate with the police.

"That upon arrival at the police precinct station, the police, in an effort to get from the defendant the name and identity of his supplier, repeated to the defendant, the possibility of his receiving a suspended sentence, if he cooperated with them in naming the person from whom he made the purchase of the marijuana cigarettes.

"That the defendant reiterated his statement made to the police at his residence, as to his purchase of the cigarettes, but refused to name or identify the supplier.

"On traverse, the defendant did not take the witness stand.

"However, the father of the defendant testified in substance as follows: That he was in the front yard of his residence 213 Alonzo Street, at the time the police arrived; that the police told his son, 'if he would show them where the remainder of the stuff was, the marijuana,' that they would see about making it easy, speaking to the district attorney and probably get him a suspended sentence; that this had been done in the past; that up to this time his son had not admitted anything to the police.

"On cross-examination the witness admitted that at the time the police were alleged to have made this statement, they had not as yet had any 'marijuana or stuff' in their possession. He further stated that the police did not explain 'what they meant by the remainder'; that they did not state

that they 'knew where the initial amount was'. He admitted that the police had stated that their information was that the marijuana was either in the automobile of his son or in his son's motorcycle. He also admitted that the police advised his son to surrender the narcotics if he had any, as they were going to search both his son's automobile and his motorcycle. He further admitted that he granted permission to the police to search his son's motorcycle and automobile.

"The witness denied that he walked over to the side of the garage with his son, after the statement made by the police as to his son's informing the police as to the identity of the supplier of the narcotics.

"In answer to a question by the Court, the father of defendant said he had not advised his son as to his course; that he told his son to do whatever was best, and to cooperate with the police."

In the perfected bill of exceptions it is stated that "the officers arrived at the residence of the defendant and acquainted said defendant and his father with the fact that they had received a complaint that the defendant possessed some marijuana either in his car or on his motorcycle; that defendant denied same; that the defendant in the presence of his father was told that if he would surrender what narcotics he might have and give the police the name of his supplier that this would be explained to the District Attorney and that it was possible that the defendant would receive a suspended sentence; that after these promises or inducements were made to the defendant he went to his motorcycle and removed from a tool box some marijuana cigarettes which he turned over to the police; that following this physical act, which was inculpatory in nature, said defendant made additional inculpatory statements, admissions and/or confessions."

Specifically, Officer William Roth, the author of the representation which immediately preceded the giving of the assailed confessions, testified (according to the transcript of testimony made a part of the bill) that he told the defendant that if he surrendered what narcotics he might have and would cooperate with the officers in the apprehension of the supplier that they would explain his actions to the district attorney and possibly, at the discretion of the latter, he might receive a suspended sentence.

Article 1, Section 11 of the Louisiana Constitution provides that no confession shall "be used against any person accused of crime unless freely and voluntarily made."

Article 451 of the Code of Criminal Procedure (LRS 15:451) recites: "Before what purposes to be a confession can be introduced in evidence, it must be affirma-

tively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."

In State v. Ellis, 207 La. 812, 22 So.2d 181, 183 we observed: "This court has consistently held over a long period of time that any confession procured through the promise of reward or through an inducement leading an accused to believe that he will receive a lesser degree of punishment is not voluntary in the meaning of the law and therefore inadmissible." (In support of this observation innumerable authorities were cited.)

Too, in the Ellis case we said that "* * * if there is any reasonable doubt as to whether the confession was free and voluntary, it must be excluded. * * *" See also State v. Henry, 196 La. 217, 198 So. 910 and State v. Crittenden, 214 La. 81, 36 So.2d 645.

■ In the instant case unquestionably the proposal of the officers, that if defendant would surrender the narcotics he had and would cooperate with them such would be explained to the district attorney and he would possibly receive a suspended sentence, might well have prompted the accused to make the confessions, he entertaining the belief at the time that as a result of them leniency respecting punishment would be shown him. True, as pointed out by the district judge and by the state, the father (who was present) advised the son to cooperate with the officers. But it is impossible for anyone to say that the admonition on the part of the father, rather than the inducement offered by the officers, was responsible for defendant's confessing.

It is also true that the officers' proposal to assist the defendant in securing leniency contained a condition which was never fulfilled. Besides the requirements of his admitting ownership of the narcotics and his surrendering them (as he did) the proposal called for the naming of his supplier. The latter condition he refused to meet. However, it could be that at the time of making the confessions the accused intended to furnish the identification, but that he later experienced a change of mind regarding that particular matter. Nevertheless, the failure of an accused to perform one of several conditions in a leniency proposal could not possibly serve to render voluntary confessions that were otherwise involuntary.

To say the least there is considerable and reasonable doubt, in view of the circumstances above described, that defendant's confessions were free and voluntary. And this being true they, under the afore-

cited authorities, should have been excluded.

 In the brief of defense counsel filed here it is said that "In this case, however, as already pointed out, after elimination of the confessions, there is a complete absence of evidence of guilty knowledge, and that gap can never be filled. Accordingly, we submit the defendant is entitled to be discharged, rather than granted a new trial. See State v. Sbisa, 232 La. 961, 95 So.2d 619 (1957)." We find no merit in this contention. The marijuana cigarettes taken by the officers from the motorcycle which concededly belonged to defendant were offered in evidence by the state. And they were correctly admitted, although a defense objection was urged thereto. Facts discovered in consequence of confessions improperly obtained may, if relevant, be proved. State v. Gebbia, 121 La. 1083, 47 So. 32 and State v. Simpson, 157 La. 614, 102 So. 810. Therefore, some evidence was before the jury from which it might have concluded that there was guilty knowledge on the part of the defendant. From which it follows that he is entitled only to a new trial—this by reason of the improper admission of his above discussed confessions.

For the reasons assigned the conviction and sentence are set aside, and the cause is remanded to the district court for a new trial according to law.